UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AILERON INVESTMENT
MANAGEMENT, LLC, a Florida
limited liability company,

    Plaintiff,

v.                                                   Case No.: 8:22-mc-7-MSS-AAS

AMERICAN LENDING CENTER,
LLC, a California limited liability
company,

    Defendants.
_____/

## ORDER

Defendant American Lending Center, LLC (ALC) and nonparty Justin Blackhall move in separate filings for protective orders quashing certain requests for production in a deposition notice issued by Plaintiff Aileron Investment Management, LLC (Aileron).[1] (Docs. 1, 7). Aileron responds in opposition. (Docs. 16, 22).

I.    BACKGROUND

Aileron requests to depose Mr. Blackhall on matters related to pending litigation in *Aileron v. American Lending Center*, No. 8:21-cv-146-MSS-AAS

---

[1] Aileron does not contest ALC's claim that it has "standing to challenge the requests for production in the Deposition Notice to protect its privileges." (Doc. 2, p. 11).

1

(hereafter, the Underlying Case). Aileron and ALC "partnered to develop a loan product that utilizes construction job creating to utilize EB-5 funding." (Underlying Case, Doc. 1, ¶ 7). Aileron was the exclusive fund manager for ALC's EB-5 investors.[2] (*Id.*). Joseph Bonora and Michael Maguire were co-managing directors at Aileron. (*Id.* at ¶¶ 19–20). Aileron used Justin Blackhall and his law firm as legal counsel, but Justin Blackhall also worked for ALC in an executive level position. (*Id.* at ¶¶ 22, 24). Aileron alleges Mr. Bonora, Mr. Maguire, and Mr. Blackhall created a shell company that collected millions of dollars in fees that ALC should have paid to Aileron. (*Id.* at ¶¶ 28–44).

As a result, Aileron sued ALC for: (1) aiding and abetting Mr. Maguire's breach of fiduciary duty; (2) aiding and abetting Mr. Bonara's breach of fiduciary duty; (3) aiding and abetting Mr. Blackhall's breach of fiduciary duty; (4) tortious interference with business relationship; and (5) breach of fiduciary duty. (*Id.* at ¶¶ 46–73). ALC moved to dismiss Aileron's complaint and to strike the special damages demand for attorney's fees. (Underlying Case, Doc. 18). A July 12, 2021 order denied ALC's motion to dismiss but granted ALC's motion to strike special damages demand for attorney's fees. (Underlying Case, Doc. 25).

---

[2] The EB-5 Immigrant Investor Program "permits noncitizens to apply for permanent residence in the United States by investing in approved commercial enterprises." *Liu v. SEC*, 140 S. Ct. 1936, 1941 (2020).

2

ALC now moves to quash seven deposition topics from Aileron's subpoena of Mr. Blackhall because the topics "purport to require [Mr. Blackhall] to produce information that is protected by the attorney-client privilege and work-product doctrine." (Doc. 1, p. 2). Mr. Blackhall moves to quash the same seven topics for the same reasons, as well as the other ten deposition topics because the topics request documents "already in AIM's possession" or "documents that have no relevance to this action." (Doc. 7, pp. 3–4). Aileron responds that its deposition topics are valid and request relevant, non-privileged information. (Doc. 16, p. 9; Doc. 22, pp. 14–18).

## II.   LEGAL STANDARD

Fed. R. Civ. P. 26(b)(1), as amended effective December 1, 2015, governs the scope of discovery in civil cases. The rule states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Courts have discretion in controlling the discovery in a case. *Mut. Serv. Ins. v. Frit Industries, Inc.*, 358 F.3d 1312, 1322 (11th Cir. 2004). Under Fed.

R. Civ. P. 26(c)(1), "[a] party or any person from whom discovery is sought may move for a protective order." For good cause, the court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The party seeking a protective order "carries the burden of showing good cause and/or the right to be protected." *See Schneider v. Hertz Corp.*, No. 3:05-cv-1298-J-MCR, 2007 WL 1231834, at *2 (M.D. Fla. Apr. 26, 2007) (citing *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). The burden "contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Id.*

## III. ANALYSIS

### I. Topics 1, 2, 9, 10, 12, and 13

Both ALC and Mr. Blackhall object to Topics 1, 2, 9, 10, 12, and 13, claiming the information requested within these topics is protected by the attorney-client privilege and work-product privilege.[3] (Doc. 2, p. 11; Doc. 8, p. 14). These topics generally request: documents and communications between Mr. Blackhall and ALC; documents and communications between Mr.

---

[3] Mr. Blackhall also asserts the information requested within these topics is protected by the joint-defense privilege. (Doc. 8, p. 13). The joint defense privilege, as Mr. Blackhall notes, is merely an extension of the work-product privilege doctrine. (*Id.*) (*citing Fojtasek v. NCL (Bahamas) Ltd.*, 262 F.R.D. 650, 656 (S.D. Fla. 2009)). This court therefore considers Mr. Blackhall's arguments on the joint-defense privilege alongside his arguments on the work-product privilege.

4

Blackhall and the law firm Quarles & Brady; documents and communications involving Silver Hawk; and documents and communications involving the Omnibus Agreements (which Aileron alleges are "omnibus assignment agreements whereby [Aileron's] loan premiums were assigned first to ALC, then from ALC to Silver Hawk"). (Doc. 2, Ex. A; Doc. 16, p. 4). Aileron responds with two arguments: (1) that ALC waived the attorney-client privilege and work-product privilege for information on these topics by raising an advice-of-counsel affirmative defense (Doc. 16, pp. 11–14); and (2) that ALC "cannot assert the attorney-client privilege related to discussions and communications concerning the Underlying [Case] and his testimony" because Mr. Blackhall acted in a non-legal capacity when conducting business with ALC and because ALC designated Mr. Blackhall as a fact witness in the Underlying Case. (*Id.* at 14–17).

This court recently rejected similar objections by ALC, made in support of a motion for protective order quashing Aileron's deposition topics for the deposition of ALC's corporate representative, because ALC "impliedly waived the attorney-client privilege as to questions about" ALC's advice of counsel affirmative defense. (Underlying Case, Doc. 116, p. 12) (*referencing* (Underlying Case, Doc. 94, p. 25)). *See also Cox v. Admin. U.S. Steel & Carnegie*, 17 F.3d 1386, 1419 (11th Cir. 1994) (noting a party can waive the

attorney-client privilege "if it injects into the case an issue that in fairness requires an examination of otherwise protected communications"); *Butterworth v. Laboratory Corp. of Am. Holdings*, No. 3:08-cv-411-MMH-JK, 2010 WL 11470895, at *5 (M.D. Fla. Dec. 2, 2010) (noting "with respect to waiving the attorney-client privilege, such a waiver may extend to fact work-product communicated to the client").

ALC claims this court found ALC "waived the attorney-client privilege only as to the signing of the Omnibus Assignment Agreements" but "preserved the privilege as to all other matters, including any communications Mr. Blackhall had with ALC or any of its representatives (including ALC's other counsel) regarding: (a) the Omnibus Assignment Agreements after ALC signed them; (b) the performance of services by Silver Hawk; and (c) the payment of any money to Silver Hawk." (Doc. 2, pp. 3–4) (*citing* (Underlying Case, Doc. 116, p. 9)).[4] This argument relies upon the following passage from this court's prior order: "ALC may not assert the attorney-client privilege shields answers to questions pertaining to Live Oak Bank's omnibus assignment to ALC or ALC's omnibus assignment to Silver Hawk . . . [but] ALC may in good faith assert any unwaived privileges in response to individual questions during the

---

[4] Mr. Blackhall raises the same contention in his motion but (unlike ALC) frames this court's prior order as "not determin[ing] there has been a waiver." (Doc. 8, p. 3).

6

deposition." (Doc. 2, pp. 2–3) (*citing* (Underlying Case, Doc. 116, pp. 7–9)).

This court's prior order denied ALC's request to quash the following deposition topics on account of the attorney-client privilege and work-product privilege: "questions pertaining to Live Oak Bank's omnibus assignment to ALC or ALC's omnibus assignment to Silver Hawk;" "[c]ommunications, dealings and agreements with Justin Blackhall and any entity controlled by Blackhall including, without limitation, Blackhall, P.C., or Bram Consulting, LLC;" "[t]he nature and scope of legal work performed by Blackhall and Blackhall P.C. for ALC and its affiliates;" and "[d]iscussions with Blackhall regarding the Omnibus Assignments and this litigation, and Blackhall's participation in this litigation as counsel or otherwise." (Underlying Case, Doc. 116, pp. 7, 11–13). These topics alone extend beyond the mere signing of the omnibus agreements.

However, Aileron has not established that merely labelling Mr. Blackhall as a fact witness for purposes of the Underlying Case or conducting prior business with ALC necessitates waiver of attorney-client privilege and work-product privilege for *all* of Mr. Blackhall's interactions with ALC. To the contrary, ALC affirms it listed Mr. Blackhall as a fact witness "in an abundance of caution in the event it asserted a reliance-of-counsel defense." (Doc. 25, p. 7). Aileron is correct that ALC waives the attorney-client privilege

7

where it "intends to call Blackhall as a fact witness to testify on 'issues necessary to establish [its] claim,'" but Aileron fails to establish ALC intends to call Mr. Blackhall to testify about issues beyond the legal advice Mr. Blackhall gave to ALC in handling the omnibus agreements. (Doc. 16, pp. 13–14) (*citing Kaplan v. Kaplan*, No. 2:10-cv-237-FTM, 2012 WL 995202, at *2 (M.D. Fla. Mar. 23, 2012)).

"In determining the scope of the waiver [of attorney-client privilege], the overriding consideration is fairness, or avoiding prejudice to the opposing party." *Inmuno Vital, Inc. v. Telemundo Group, Inc.*, 203 F.R.D. 561, 564 (S.D. Fla. 2001). As with this court's prior order, the interests of fairness necessitate Mr. Blackhall produce documents and communications related to his representation of ALC in handling the omnibus agreements. The motion for protective order as to Topic 13 is thus **DENIED**. The motion for protective order as to Topics 1, 9, and 10 is **GRANTED in part**. Mr. Blackhall must produce communications or documents referencing ALC or Silver Hawk related to his representation of ALC in handling the omnibus agreements. Aileron fails to establish ALC waived the attorney-client privilege as to its communications with Quarles & Brady, and the motion for protective order is therefore **GRANTED** as to Topics 2 and 3.

## II. Topics 5–8, 16

Mr. Blackhall objects to Topics 5–8 and 16 on grounds that the topics command the production of "documents that have no relevance to the pleadings or issues in this action." (Doc. 8, p. 19). Mr. Blackhall argues the topics request documents evidencing Mr. Blackhall's relationship with several non-parties to the underlying litigation and that "the claims in this action do not involve any of these non-parties." (*Id.*). Mr. Blackhall does not materially dispute Aileron's assertion that these non-parties are either "entities in which Blackhall held an ownership interest," "entit[ies] in which John Shen or [Stella] Zhang (ALC's principals) also own an interest," or a "Sunstone entity (which are companies affiliated with ALC, controlled by ALC's owners, and operated from the same offices)." (Doc. 22, pp. 16–17).

This court previously denied ALC's motion for a protective order barring similar topics involving some of the same non-parties. (Underlying Case, Doc. 116, p. 14–15). This court noted Aileron's allegations that the requests for documents involving the non-parties would "provide relevant information about the financial benefit realized by ALC through its business venture with [Aileron] to address ALC's motive for facilitating the misconduct of the Former [Aileron] Representatives." (*Id.* at 15) (internal citations omitted). As with this court's prior order, Mr. Blackhall fails to establish Topics 5–8 and 16 are

9

irrelevant or disproportionate to the needs of this case. The motion for protective order as to Topics 5–8 and 16 is **DENIED**.

### III. Topics 4, 14–17

Mr. Blackhall objects to Topics 4 and 14–17 because they "command[] Blackhall to produce documents that [Aileron] already knowingly possesses." (Doc. 8, pp. 18–19). These topics generally encompass documents evidencing payment from ALC to Silver Hawk and entities owned by Mr. Blackhall, drafts of the Omnibus Agreements, and documents describing Mr. Blackhall as a founder of a Sunstone entity or as general counsel of an Aileron entity. (Doc. 8, Ex. 1, pp. 4–5). Mr. Blackhall argues he has already produced tax returns and other documents detailing compensation paid to him, Silver Hawk, and other entities owned by Mr. Blackhall, rendering Topics 4 and 14 duplicative. (Doc. 8, p. 20). Mr. Blackhall further argues testimony from multiple depositions has already refuted the notion that Mr. Blackhall ever acted as general counsel for Aileron. (Doc. 8, pp. 19–20). Aileron does not dispute that ALC has produced documents relating to much of these topics, but instead claims similar requests of Mr. Blackhall remain necessary "to ascertain all sources of compensation to Blackhall and entities he controls." (Doc. 16, p. 16).

Aileron has failed to establish the necessity of Mr. Blackhall producing the duplicative information described in Topics 4, 14, and 17. The motion for

protective order is thus **GRANTED** as to Topics 4, 14, and 17. Mr. Blackhall does not materially object to Topics 15 and 16 and the motion for protective order is thus **DENIED** as to Topics 15 and 16.

## IV.   CONCLUSION

ALC's and Mr. Blackhall's Motions for Protective Order (Docs. 2, 7) are **GRANTED in part**. Mr. Blackhall must produce the documents by **April 22, 2022**. Each party will bear its own attorney's fees and costs in relation to the motion. See Fed. R. Civ. P. 37(a)(5)(C) (giving the court discretion on whether to award fees when the discovery motion is granted in part and denied in part).

**ORDERED** in Tampa, Florida on April 1, 2022.

_Amanda Arnold Sansone_
AMANDA ARNOLD SANSONE
United States Magistrate Judge